IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| IN RE: LUMBER LIQUIDATORS ) | |
| CHINESE-MANUFACTURED FLOORING ) | |
| DURABILITY MARKETING AND SALES ) | MDL No. 1:16md2743 (AJT/TRJ) |
| PRACTICE LITIGATION ) | |
| ———————————————————— ) | |

This Document Relates to ALL Cases
————————————————————————

## **MEMORANDUM OPINION**
(Defendant's Motion to Dismiss Plaintiffs' Representative Class Action Complaint)

Presently pending before the Court is Defendant Lumber Liquidators, Inc.'s "Motion to Dismiss the Representative Class Action Complaint" [Doc. No. 53] (the "Motion").[1] Upon consideration of the Motion, the memoranda in support thereof and in opposition thereto, the arguments of counsel at the hearing held on June 12, 2017, and for the reasons set forth below, the Motion is GRANTED as to:

(1) all Plaintiffs' claims for breach of implied warranty (Count I);

(2) Alabama Plaintiff Erin Florez's claim for fraudulent concealment (Count II);

(3) Virginia Plaintiff Logan Perel's claim for breach of written warranty under the Magnuson-Moss Warranty Act (Count III);

(4) California Plaintiff Jim Moylen's claim for damages under the California Legal Remedies Act (Count VI); and

(5) Alabama Plaintiff Erin Florez's claim under the Alabama Deceptive Trade Practices Act (Count VII).

---

[1] These Plaintiff were selected by Plaintiffs' lead counsel to be representative plaintiffs ("Representative Plaintiffs" or "Plaintiffs") in the Representative Class Action Complaint [Doc. No. 41] (the "Complaint" or "Compl."), which was filed pursuant to the Court's order dated March 3, 2017 [Doc. No. 44]. The Complaint does not displace any of the underlying complaints that have been transferred to the Court in this MDL. However, the rulings with respect to the Complaint will apply to all claims asserted in each Plaintiff's complaint unless a Plaintiff shows that a claim is materially different legally or factually from those considered in the Complaint. *See* Pretrial Order No. 1 [Doc. No. 2] at 17 ("The Court intends to decide such motions on a representative basis and apply its decision on a representative motion to similar motions in all other cases, except to the extent that different cases or classes of cases present materially different legal issues.").

The Motion is otherwise DENIED, and the following claims will remain for adjudication:

(1) all Plaintiffs' claims for fraudulent concealment other than that of Alabama Plaintiff Erin Florez (Count I);

(2) all Plaintiffs' implied warranty claims and all Plaintiffs' written warranty claims under the Magnuson-Moss Warranty Act other than that of Virginia Plaintiff Logan Perel (Count III);

(3) California Plaintiff Jim Moylen's claim under the California Unfair Competition Law (Count IV);

(4) California Plaintiff Jim Moylen's claim under the California False Advertising Law (Count V);

(5) California Plaintiff Jim Moylen's claim for injunctive relief under the California Legal Remedies Act (Count VI); and
(6) Nevada Plaintiff Kelly Ryan's claim under the Nevada Deceptive Trade Practices Act (Count VIII);

(7) New York Plaintiff Karen Hotaling's claim under the New York General Business Law (Count IX); and

(8) Virginia Plaintiff Logan Perel's claim under the Virginia Consumer Protection Act (Count X).[2]

## I.     CLAIMS AND PROCEDURAL HISTORY

Plaintiffs collectively have asserted the following ten causes of action in the

Representative Complaint.[3]

Count I: breach of implied warranties (by all Plaintiffs and all classes) (Compl. ¶¶ 116-24);

Count II: fraudulent concealment (by all Plaintiffs and all classes) (Compl. ¶¶ 125-48);

Count III: violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.* ("MMWA") (by all Plaintiffs and all classes) (Compl. ¶¶ 149-65);

_____

[2] Defendant also filed a "Motion to Strike Irrelevant and Prejudicial Allegations from the Representative Class Action Complaint" [Doc. No. 51] on March 20, 2017, which the Court has under advisement.
[3] The Plaintiffs seek class certification with respect to each of these counts pursuant to Federal Rule of Civil Procedure 23(b)(3).

<u>Count IV</u>: violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.* by (Plaintiff Jim Moylen ["Moylen"] and the California class) (Compl. ¶¶ 166-73);

<u>Count V</u>: violation of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.* (by Plaintiff Moylen and the California class) (Compl. ¶¶ 174-77);

<u>Count VI</u>: violation of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.* (by Plaintiff Moylen and the California class) (Compl. ¶¶ 178-84);

<u>Count VII</u>: violation of the Alabama Deceptive Trade Practices Act ("ADTPA"), Ala. Code §§ 8-19-1 *et seq.* (by Plaintiff Erin Florez ["Florez"] and the Alabama class) (Compl. ¶¶ 185-92);

<u>Count VIII</u>: violation of the Nevada Deceptive Trade Practices Act ("NDTPA"), Nev. Rev. Stat. § 41.600; *id.* §§ 598.0915 *et seq.* (by Plaintiff Kelly Ryan ["Ryan"] and the Nevada class) (Compl. ¶¶ 193-203);

<u>Count IX</u>: violation of New York General Business Law §§ 349 *et seq.* (by Plaintiff Karen Hotaling ["Hotaling"] and the New York class) (Compl., Count IX, ¶¶ 1-12[4]); and

<u>Count X</u>: violation of the Virginia Consumer Protection Act ("VCPA"), Va Code §§ 59.1-198 *et seq.* (by Plaintiff Logan Perel ["Perel"] and the Virginia class) (Compl. ¶¶ 204-09).

## II.    FACTS

Plaintiffs' Complaint alleges the following:

### A.    **Lumber Liquidators' Business and Marketing Representations**

Defendant Lumber Liquidators sold composite wood-based laminate products, including Chinese-manufactured composite wood flooring manufactured under the private label "Dream Home" brand [5] (the "Products").  Compl. ¶¶ 1, 9.  Lumber Liquidators then distributed, marketed, and sold its Chinese-manufactured composite wood flooring in Alabama, California,

---

[4] The paragraphs in the Complaint are numbered incorrectly.  Under Count IX, paragraph numbering restarts for that count only and then resumes where it stopped.  Accordingly, those paragraphs that fall within Count IX will be cited with the label "Count IX" preceding the paragraph number.
[5] The Dream Home brand includes the St. James, Ispiri, Kensington Manor, and Nirvana flooring lines.  Compl. ¶ 8.

Nevada, New York, and Virginia, where the Plaintiffs purchased the Products, as well as in other states.  *Id.* ¶ 2.

Lumber Liquidators advertised that the Products were durable and, in particular, that they complied with the European abrasion criteria or class "AC3."  *Id.* ¶ 3.  There is no applicable state or federal law that regulates the durability of laminate flooring; however, the Complaint alleges that AC3 is the industry standard for measuring the durability of laminate flooring.  *Id.*  More specifically, "[a]n AC3-rated laminate is considered . . . as suitable for general household use, including high traffic areas such as hallways and kitchens."  *Id.* ¶ 4.  Major flooring retailers in the United States, including Lowe's and Home Depot, have settled on AC3 as the suitable minimum product standard, and customers have come to expect at least that level of durability.  *Id.* ¶ 34.  The AC3 compliance representation was made on the Products' "landing pages" on LL's website,[6] *id.* ¶ 58, and Lumber Liquidators sales personnel made various representations about the Products' durability "[b]ased upon the [Products'] claimed AC3 compliance," *id.* ¶ 67.

Lumber Liquidators also used various terms to describe the strength of its Products, including statements that they were "very durable," "extremely durable," "scratch resistant," and "harder than hardwood."  *Id.* ¶ 10.  Plaintiffs informed Lumber Liquidators personnel that they had pets and needed flooring suitable for use by domestic animals, and sales personnel further represented that the Products "wood [sic] not scratch from pet nails" and would "hold up" to pets.  *Id.* ¶ 67.  These sorts of representations appeared on Lumber Liquidators' website product pages for the Products and were orally made by Lumber Liquidators' store managers and sales staff to these Plaintiffs before they made their purchases.  *Id.*  "Lumber Liquidators has promoted the [Products] through its in-store management and sales staff, who are trained based upon—and

<hr>

[6] "Each Plaintiff who researched their [sic] [Product] on Defendant's website saw the [Product] Landing Page representations corresponding to the time of their purchase, and also saw the AC3 rating on the product-specific web page [sic], and relied upon these representations in purchasing their respective Laminates . . . ."  Compl. ¶ 59.

are encourage [sic] to consult and repeat—the product specifications, features, and supposed 'advantages' described on product pages for each of the [Products] on the Lumber Liquidators web site [sic]." *Id.* ¶ 12. Plaintiffs claim that in the context in which LL used these terms, they constituted specific representations that the Products were at least AC3-compliant. *Id.* ¶ 30. LL also claimed in its "limited warranties" that the Products each met the "industry's highest standards." *Id.* ¶ 13(c).

**B.        Plaintiffs' Experience with the Products**

Plaintiffs aver that "the [Products] are not AC3 compliant and not durable, as revealed by extensive, recent product testing as part of the investigation leading to this action." *Id.* ¶ 14. Plaintiffs state that "[o]ver the 22 months, samples of the [Products] were tested by a certified and accredited laboratory. The testing method used by the lab is the same standardized test method used worldwide throughout the flooring industry to determine the AC rating of laminate flooring products. The [Products] failed to meet the AC3 standard." *Id.* ¶ 75. However, the Complaint only specifically references Plaintiffs Ryan's (Nev.) and Hotaling's (N.Y.) particular flooring as actually purchased flooring that was tested and found to not be AC3 compliant. *Id.* ¶¶ 98, 100.

Plaintiffs additionally allege that they experienced the following specific problems, *inter alia*, with the Products: (1) "[v]isible and unsightly scratching in normal everyday use, including but not limited to pet traffic," (2) "[w]ear patterns that expose and deteriorate the photographic paper layer of the laminate," (3) "[c]hipping," (4) "[f]ading," (5) "[b]ubbling," (6) "[w]arping/curling," and (7) "[s]taining." *Id.* ¶ 15. When approached about these problems, LL "engages in a pattern and practice of delay and obfuscation," *id.* ¶ 77, including blaming

durability problems and defects on installers, moisture problems, normal product variability, and consumer misuse, *id.* ¶ 79.

The Complaint also alleges facts specific to each of the Representative Plaintiffs.  *See id.* ¶¶ 94-95 (Florez); ¶¶ 96-97 (Moylen); ¶¶ 98-99 (Ryan); ¶¶ 100-01 (Hotaling); and ¶¶ 102-03 (Perel).   Briefly summarized, the Complaint alleges that each Representative Plaintiff purchased the Products in reliance on Defendant's various statements and guarantees that the Products were durable and AC3 compliant, became aware that the Products were in fact not durable for the reasons stated above, and suffered harm in the form of the purchase price of the floors, installation costs, and replacement costs.

### C.      Warranties and Disclaimers

The first page of the invoices that LL provided to Plaintiffs at the time of sale states that each Product comes with a "[30-]year warranty."  *Id.* ¶ 69 (alteration in original).  However, those invoices did not state the substance of the "limited warranty," and no "limited warranty" was ever presented or shown to Plaintiffs at the time of the sale.  *Id.* ¶ 70.  Rather, each of the invoices contained a section titled "Limited Warranty" which stated, "Products may or may not have a limited warranty as specified in information with the product or available as set forth below."  Defendant's Reply in Support of its Motion to Dismiss [Doc. No. 65] ("Def.'s Reply"), Exs. 2A at 2, 2B at 3, 2C at 2, 2D at 2, 2E at 2, DF at 4.  "Set forth below" was the statement that "[f]or written copies of limited product warranties, . . . visit the website at www.lumberliquidators.com or contact the Customer Care Department at (800) 366-4204."  *Id.* The full terms of the limited warranties were posted on the LL website listed, and Defendant has attached copies of the limited warranties pertaining to each of Plaintiff's purchases to its Memorandum in Support of its Motion to Dismiss [Doc. No. 54] ("Def.'s Mem. Supp.") as

Exhibit 1.[7]  For example, the limited warranty for the St. James Collection of flooring, which

Plaintiff Hotaling (N.Y.) purchased (and which does not appear materially different from the

limited warranty applicable to the Kensington Manor Collection purchased by Plaintiffs Florez

(Ala.), Ryan (Nev.), and Perel (Va.)) states in part:

- "Each board is meticulously inspected throughout the manufacturing process to make sure it complies with St [sic] James's unwavering standards." *Id.*, Ex. 1 at 12.

- The flooring "is warranted against finish wear from normal household conditions resulting in the exposure of the paper layer" of the laminate but such warranty does not include "5% of the total square footage of your purchase" as a standard "waste factor." *Id.*, Ex. 1 at 12.

- Coverage is disclaimed for, *inter alia*, "[d]amages caused by moisture," which "can cause issues such as cupping, crowning, warping, buckling, peeling, seam swelling, twisting, delaminating, or gapping"; "indentations and scratches (caused by pets, furniture, appliances, tools, heels, toys, etc.)"; "[f]adding or loss of gloss"; "[d]effects in flooring that do not exceed the waste factor"; "[l]osses, damages or expenses relating to anything other than the floor itself"; and "costs relating to the removal of defective flooring or installation of replacement flooring." *Id.*, Ex. 1 at 16-17.

- LL "will provide a store credit for the purchase price paid for the defective portion of the flooring (excluding any installation costs and labor) in excess of the applicable waste factor. . . . A store credit is the sole remedy." *Id.*, Ex. 1 at 14.

- "UNDER NO CIRCUMSTANCES WILL WE BE LIABLE FOR ANY DIRECT, INDIRECT OR CONSEQUENTIAL DAMAGES" and "UNDER NO CIRCUMSTANCES WILL OUR LIABILITY ARISING OUT OF OR RELATING TO THE PURCHASE OF YOUR . . . FLOORING EXCEED THE TOTAL SUM PAID BY YOU FOR THE FLOORING AT ISSUE." *Id.*, Ex. 1 at 14.

- "The terms above represent the sole and exclusive warranty with regard to your St. James flooring.  WE DISCLAIM ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OF

---

[7] Plaintiffs do not dispute the authenticity of these warranties but rather argue that "this Court cannot consider the limited warranties on this Rule 12(b)(6) motion" because Plaintiffs did not attach them to their Complaint.  Pls.' Mem. Opp'n 4.  However, "when a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'"  *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (citation omitted).  Here, in the Complaint, Plaintiffs have referenced and extensively relied on the limited warranties that Defendant issued in connection with their purchases and have asserted, *inter alia*, counts for breach of written warranty.  For these reasons, the limited warranties Defendant has filed are "integral to and explicitly relied on" by Plaintiffs in order to establish their claims, and the Court has considered the undisputed substance of those warranties.

FITNESS FOR A PARTICULAR PURPOSE, EXCEPT TO THE EXTENT THAT ANY SUCH WARRANTIES CANNOT BE VALIDLY DISCLAIMED UNDER APPLICABLE LAW." *Id.*, Ex. 1 at 14.

The warranty pertaining to the purchase of Plaintiff Moylen (Cal.) is also substantially similar to the St. James Collection warranty described above but differs in its disclaimer (which does not make any specific mention of the implied warranty of merchantability):

> The terms above represent the sole and exclusive warranty with regard to your Dream Home flooring. WE DISCLAIM ALL OTHER WARRANTIES, EXCEPT TO THE EXTENT THAT ANY SUCH WARRANTIES CANNOT BE VALIDLY DISCLAIMED UNDER APPLICABLE LAW.

*Id.*, Ex. 1 at 47. It does not make any specific mention of the implied warranty of merchantability.

### III. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994); *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1994). A claim should be dismissed "if, after accepting all well-pleaded allegations in the plaintiff's complaint as true . . . it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *see also Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001). In considering a motion to dismiss, "the material allegations of the complaint are taken as admitted," *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted), and the court may consider exhibits attached to the complaint, *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F. 2d 1462, 1465 (4th Cir. 1991).

Moreover, "the complaint is to be liberally construed in favor of plaintiff." *Id.*; *see also Bd. of Trustees v. Sullivant Ave. Props., LLC*, 508 F. Supp. 2d 473, 475 (E.D. Va. 2007). In addition, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards,

which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Nevertheless, while Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (The complaint "must be enough to raise a right to relief above the speculative level" to one that is "plausible on its face."); *see also Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). As the Supreme Court stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008), "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw a reasonable inference that the defendant is liable for the conduct alleged."

## IV. ANALYSIS OF ISSUES APPLICABLE TO MULTIPLE CLAIMS

Although there are ten distinct counts pleaded in the Complaint, there are certain core questions that cut across these claims, including whether Plaintiffs have sufficiently alleged that (1) LL made a misrepresentation or omission, (2) LL's misrepresentation was material, and (3) Plaintiffs relied on that misrepresentation.

### A. Whether Plaintiffs Have Sufficiently Alleged a Misrepresentation or Omission

Many of Plaintiffs' claims require proof that LL's Products were not, in fact, as LL advertised them to be or that LL failed to provide Plaintiffs with information which it was required to provide by law. Some claims additionally require Plaintiffs to show that Defendant knew that its representations were false.

The Complaint alleges that LL advertised that the Products were AC3 compliant, that AC3 compliance is a measure of the durability of laminate flooring, and that AC3 is the industry standard in laminate flooring in the United States. In support of its claim that LL's Products were not AC3 compliant, Plaintiffs allege that the Products underwent "extensive, recent product

testing as part of the investigation leading to this action." Compl. ¶ 14. It further alleges that "samples of the [Products] were tested by a certified and accredited laboratory. The testing method used by the lab is the same standardized test method used worldwide throughout the flooring industry to determine the AC rating of laminate flooring products. The [Products] failed to meet the AC3 standard." *Id.* ¶ 75. Although Plaintiffs do not allege that the named Plaintiffs' individual Products were tested other than those of Plaintiffs Ryan and Hotaling, they allege that "the [Products] comprise a single product, which are substantial [sic] similar in every way material to the claims presented herein." *Id.* ¶ 17. In addition to their allegations of AC3 non-compliance, Plaintiffs also provide anecdotal accounts of their personal experience with the flooring experiencing chipping, cracking, and other forms of defects. Construing the Complaint liberally in favor of Plaintiffs, Plaintiffs have set forth alleged facts that make plausible their claim that LL's Products were not AC3 compliant.

The Complaint also sets forth facts that make plausible their claim that Lumber Liquidators knew, or, through the exercise of reasonable care, should have known, that its representations regarding the Products' durability were inaccurate. Even under the heightened Federal Rule of Civil Procedure 9(b) pleading standard that applies to certain claims in Plaintiffs' Complaint, allegations as to a defendant's knowledge "may be alleged generally." Fed. R. Civ. P. 9(b). In support of their assertion that "[LL] intentionally failed to disclose the fact that" the Products "were not fit for their intended use, a fact only known to [LL]," *id.* ¶ 144, Plaintiffs point to Lumber Liquidators' claim that "[e]ach board is meticulously inspected throughout the manufacturing process to make sure it complies with [its] unwavering standards." *Id.* ¶ 53. Plaintiffs also point to various "sourcing initiatives" undertaken by LL's CEO and Chief Merchandising Officer that should have uncovered issues with the durability of its flooring,

including lack of AC3 compliance.  *See id.* ¶¶ 38-55.  Plaintiffs have therefore adequately alleged that LL knowingly made a misrepresentation for the purposes of this motion to dismiss.

## B.      Whether Plaintiffs Have Sufficiently Alleged Materiality

Some of Plaintiffs' claims require Plaintiffs to demonstrate that the misrepresentations or omissions they allege Lumber Liquidators made were material.  In that regard, Lumber Liquidators claim that the terms LL and its salespeople used to describe the Products and that also appeared on the LL website constitute mere puffery.

Last term, the United States Supreme Court clarified that the "materiality requirement descends from 'common law antecedents.'"  *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2002 (2016) (quoting *Kungys v. United States*, 485 U.S. 759, 769 (1988)).  The Court explained:

> Under any understanding of the concept, materiality "look[s] to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation."  26 R. Lord, Williston on Contracts § 69:12, p. 549 (4th ed. 2003) (Williston).  In tort law, . . . a "matter is material" in only two circumstances: (1) "[if] a reasonable man would attach importance to [it] in determining his choice of action in the transaction"; or (2) if the defendant knew or had reason to know that the recipient of the representation attaches importance to the specific matter "in determining his choice of action," even though a reasonable person would not.  Restatement (Second) of Torts § 538, at 80.

*Universal Health Servs., Inc.*, 136 S. Ct. at 2002-03.  In elaborating on the meaning of "materiality," the Court cited with approval a treatise that appears to incorporate into materiality essentially a "but for" element[8] and a state court decision that viewed materiality in terms of whether a misrepresentation "went to the very essence of the bargain."[9]

---

[8] *See Universal Health Servs., Inc.*, 136 S. Ct. at 2003 n.5 ("a misrepresentation is material if, had it not been made, the party complaining of fraud would not have taken the action alleged to have been induced by the misrepresentation" (quoting Williston § 69:12 at 550)).

[9] *Universal Health Servs., Inc.*, 136 S. Ct. at 2003 n.5 (quoting *Junius Constr. Co. v. Cohen*, 178 N.E. 672, 674 (N.Y. 1931) (internal quotation marks omitted)).

LL's representation on its website and through its sales personnel that its Products complied with the AC3 standard would likely influence a reasonable consumer's choice of products to purchase. Even if a consumer did not know specifically what the AC3 standard was, as Defendant argues here, he or she would still be able to compare LL's Products with other products sold by LL's competitors. In comparing products' respective descriptions, a difference in stated abrasion ratings would become apparent, as Plaintiffs allege. Every Plaintiff alleges that he or she was either told or read that the Product he or she purchased was AC3 compliant so every Plaintiff has adequately alleged that LL's statements were material.

## C.     Whether Plaintiffs Have Sufficiently Alleged Reliance

Many of Plaintiffs' claims require that Plaintiffs actually relied on Lumber Liquidators' alleged misrepresentations or that Plaintiffs would have known about allegedly omitted information that LL was required to disclose, had Lumber Liquidators, in fact, disclosed it. There are some variations in the definitions of reliance as between state and federal law and among the states themselves, but those differences are not so great as to affect the Court's ruling on this motion to dismiss in light of the clarity of the facts pleaded by each Plaintiff.

Each Plaintiff has adequately alleged reliance at this stage of the litigation. For example, Plaintiff Florez (Ala.) "was shown a chart, which was placed prominently in front of each piece of laminate for sale, displaying that each laminate, including the Kensington Manor Warm Springs Chestnut [which she purchased], had an AC rating of AC3, was scratch resistant and was durable. Plaintiff relied upon the above-referenced representations in making her decision to purchase this product from Defendant." Compl. ¶ 94. Other Plaintiffs like Hotaling (N.Y.) "researched this [P]roduct on Lumber Liquidators' website" which includes a list of product

advantages including "'AC Rating: 3.'" *Id.* ¶ 100. "Plaintiff saw the AC3 rating on Defendant's website and relied upon it . . . ." *Id.*[10]

For the reasons set forth above, the Court finds that all Plaintiffs have adequately alleged reliance for each claim.

## V. ANALYSIS OF SPECIFIC CLAIMS

### A. Fraudulent Concealment (Count II)

Plaintiffs contend that Lumber Liquidators

> concealed and suppressed material facts concerning the durability of its Dream Home laminate flooring products. Defendant failed to disclose that its Dream Home laminate flooring products were defective, not AC3 rated, not "very durable," were not "premium" and would scratch, fade, stain, bubble, delaminate and curl during ordinary residential foot and pet traffic.

Compl. ¶ 141.

### 1. Whether Plaintiffs Have Established a Prima Facie Case

Each relevant state's fraudulent concealment cause of action includes a similar set of elements: (1) misrepresentation or omission of a material fact, (2) a duty to disclose, (3) intent to induce reliance and/or defraud, (4) some form of reliance, and (5) resulting damages.

As described above, Plaintiffs have sufficiently alleged that LL's alleged misrepresentations were material. Regarding the second element—duty to disclose—Defendant argues that Lumber Liquidators owed no special duty to these Plaintiffs. *See* Def.'s Mem Opp'n 24. While there are some differences among the relevant states concerning when a party has a

---

[10] LL attacks the sufficiency of some of the Plaintiffs' allegations as to reliance on the grounds that while Plaintiffs state that they researched the Products on LL's website and that the website marketed the products as AC3 compliant, Plaintiffs did not specifically allege that they *saw* the specific AC3 compliance representation. *See* Def.'s Mem. Supp. 14. The Complaint explicitly states, however, that "[e]ach Plaintiff who researched their [Product] on Defendant's website saw . . . the AC3 rating on the product-specific web page, and relied upon these representations in purchasing their respective [Products], as more particularly alleged below." Compl. ¶ 59. In any event, liberally construing the Complaint in favor of the Plaintiffs for the purposes of a motion to dismiss, the Court concludes that even were these allegations viewed as Defendant characterizes them, the Complaint would plausibly allege that each Plaintiff who visited the LL website saw the content displayed on that webpage, even if she does not specifically reference that content in the Complaint.

duty to disclose, all recognize a duty to disclose in at least one of the two following circumstances: (1) when one party voluntarily discloses information, the whole truth must be disclosed or (2) when one party possesses superior information to the other and knows or should have known that the other is acting on the basis of mistaken information.[11] Viewing the alleged facts liberally and most favorably to the Plaintiffs, Plaintiffs have alleged facts sufficient to make plausible that Defendants had a duty to disclose either because LL voluntarily represented that its Products were AC3 compliant without disclosing other information calling into question the accuracy or completeness of that voluntary disclosure; or LL possessed superior information and knew that consumers were likely acting based on false, incomplete, or misleading information.

With respect to the third element of intent to induce reliance, Plaintiffs have adequately alleged that Lumber Liquidators had knowledge that its representations were false and that a reasonable consumer could be expected to rely on them. *See* Section IV(A), *supra*. Plaintiffs have also sufficiently alleged the fourth element of reliance for the reasons set forth above. *See* Section IV(C), *supra*. Regarding the fifth element of damages, Plaintiffs have adequately alleged that "[a]s a proximate result of Defendant's conduct as set forth in this cause of action, Plaintiffs and the Class will now be required to remove and replace their defective and damaged

---

[11] *See, e.g., Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (finding that, "New York recognizes a duty by a party to a business transaction to speak . . . where the party has made a partial or ambiguous statement . . . [or] where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge"); *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 987 (N.D. Cal. 2010) (recognizing duty to disclose under California consumer protection laws when the defendant had exclusive knowledge of material facts and actively concealed those facts or made a partial misrepresentation); *Mason v. Chrysler Corp.*, 63 So.2d 951, 954 (Ala. 1995) (finding a duty to disclose  under Alabama law based on "the relative knowledge of the parties" and "other circumstances of the case"); *Villalon v. Bowen*, 273 P.2d 409, 414-15 (Nev. 1954) ("[A]n obligation to speak can arise from the existence of material facts peculiarly within the knowledge of the party sought to be charged and not within the fair and reasonable reach of the other party."); *Spence v. Griffin*, 372 S.E.2d 595, 599 (Va. 1988) ("A contracting party's willful nondisclosure of a material fact that he knows is unknown to the other party may evince an intent to practice actual fraud.").

laminate flooring."  Compl. ¶ 146.[12]  All Plaintiffs have therefore adequately alleged facts that make plausible their claim for fraudulent concealment.

> ### 2.    Whether the Alabama Statute of Limitations Bars Plaintiff Florez's Claim

Notwithstanding that all Plaintiffs have sufficiently alleged fraudulent concealment, LL contends that Alabama's statute of limitations bars Plaintiff Florez's claim.  *See* Def.'s Mem. Supp. 6.  Under Alabama law, the statute of limitations for fraud is two years after "discovery by the aggrieved party of the fact constituting the fraud."  Ala. Code § 6-2-3.  The Alabama Supreme Court has recently stated that "[t]he question of when a plaintiff should have discovered fraud should be taken away from the jury and decided as a matter of law . . . in cases in which the plaintiff *actually knew* of facts that would have put a reasonable person on notice of fraud." *Bryant Bank v. Talmage Kirkland & Co.*, 155 So.3d 231, 237 (Ala. 2014) (citing *Hicks v. Globe Life & Accident Ins. Co.*, 584 So.2d 458, 463 (Ala. 1991)).

Florez purchased her laminate flooring "[i]n or about February 15, 2014" and "soon after installation . . . noticed buckling and peeling of the surface of the flooring."  Compl. ¶ 94.  The Plaintiff filed her suit on August 29, 2016, over two and a half years later.  Measured by her own allegations, Plaintiff's claim is therefore plainly beyond Alabama's statute of limitations as she had actual knowledge sufficient to put a reasonable customer on notice that the flooring did not comply with representations made to that customer and, therefore, of the facts constituting fraud.

Plaintiff claims, however, that the statute of limitations should be tolled under the saving provision, § 6-2-3, which tolls the running of the statute until the aggrieved party discovers the

---

[12] For the same reasons that apply to any defense based on the applicable warranty's disclaimers, *see infra* note 26, this ruling is without prejudice to Defendant's defense that Plaintiffs' remedy is limited in any event under the applicable warranties.  *See also infra* notes 15, 16 and 20.

facts constituting the fraud.[13]  The burden of proving that the claim falls under the provision is on the plaintiff who "must allege the time and circumstances of the discovery of the cause of action," "facts or circumstances by which the defendants concealed the cause of action or injury[,] and what prevented the plaintiff from discovering the facts surrounding the injury." *DGB, LLC v. Hinds*, 55 So.3d 218, 226 (Ala. 2010).

Florez's allegations, on their face, establish as a matter of law that her claim is time barred.  First and foremost, for the reasons explained above, Florez's allegations establish that she had actual notice of the durability issues of her flooring "soon after" February 15, 2015.  Therefore, if the limitations period were tolled, it would only be tolled until she was on notice of the defects, not plausibly a sufficient period of time to make her claim timely.  Second, notwithstanding Plaintiff's argument that by attributing durability issues to causes other than the defect, Defendant fraudulently concealed the cause of action or injury, Pls.' Mem. Opp'n 26, Plaintiff has failed to plead "facts acquitting [the Plaintiff] of all knowledge of facts which ought to have put [her] on inquiry."  *Johnson v. Shenandoah Life Ins. Co.*, 281 S.2d 636, 643 (Ala. 1973).  As mentioned above, the rapid rate at which Florez alleges the floor deteriorated gave the Plaintiff reasonable notice of the alleged fraud.  The Court therefore GRANTS Defendant's Motion to dismiss Count II for fraudulent concealment as to Alabama Plaintiff Florez but DENIES the Motion as to all other Plaintiffs.

### B.  Violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.* (Count IV)

The California UCL prohibits "unlawful, unfair or fraudulent business act[s] or practice[s] and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof.

---

[13] "In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action."  Ala. Code § 6-2-3.

Code § 17200.  It requires that a plaintiff's economic injury come "as a result of" the allegedly unfair competition.  *Id.* § 17204.  California courts have concluded that the UCL imposes an "actual reliance" requirement on private citizens prosecuting a claim under the "unfair" and "fraud" prongs of the UCL and also under the "unlawful" prong to the extent that the substance of the unlawful conduct is a misrepresentation claim.  *Hale v. Sharp Healthcare*, 108 Cal. Rptr. 3d 669, 678-79 (Cal. Ct. App. 2010) (citing *In re Tobacco II Cases*, 207 P.3d 20, 39 (Cal. 2009)).

Here, Plaintiff Moylen brings suit under all three prongs of the UCL.  A claim for common law fraud suffices to establish a valid UCL fraud claim; and because Plaintiff Moylen has adequately alleged a claim for common law fraud under California law, as set forth above in Section V(B), he has also adequately alleged facts that make plausible his UCL claim.  Accordingly, Defendant's Motion is DENIED as to Count IV.

### C.    Violation of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.* (Count V)

The California False Advertising Law makes unlawful any "untrue or misleading" advertising.  Cal. Bus. & Prof. Code § 17500.  It prohibits "advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public."  *Kasky v. Nike, Inc.*, 45 P.3d 243, 250 (Cal. 2002) (alteration in original) (citation omitted) (internal quotation marks omitted).  In order to prove a violation of the FAL, a plaintiff must show that the "statement[] . . . [is] untrue or misleading" and that the defendant "knew, or by the exercise of reasonable care should have known, that the statements were [un]true or misleading."  *People ex rel. Mosk v. Lynam*, 253 Cal. App. 2d 959, 965 (Cal. Ct. App. 1967).

Plaintiff Moylen has adequately alleged facts that make plausible these two elements for the reasons set forth above.  *See* Section IV(A), *supra*.  Accordingly, Defendant's Motion is DENIED as to Count V.

### D.    Violation of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 17500 *et seq.* (Count VI)

Similar to the UCL, California's CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices."  Such practices include "[r]epresenting that goods are of a particular standard, quality, or grade . . . if they are of another."  Cal. Civ. Code § 1770(a).  The California Plaintiff alleges that Lumber Liquidators represented that its Chinese-manufactured laminate flooring was AC3 compliant when it was not.  Only consumers who have suffered injury "as a result of" allegedly unlawful conduct may bring suit.  *Id.*  The California Supreme Court has determined that the meaning of this phrase in the CLRA parallels that in the UCL.  *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 887-88 (Cal. 2011).  For the same reasons as described above in the Court's discussion of the UCL claim (Count IV), the Court finds that Plaintiff Moylen has adequately alleged an injury of the form the CLRA makes actionable.

However, as Defendant argues, Plaintiff Moylen fails to allege compliance with the notice requirement of the CLRA.  In that regard, the CLRA requires that "[t]hirty days or more prior to the commencement of an action for damages pursuant to this title, the consumer shall . . . [n]otify the person alleged to have employed or committed methods, acts, or practices declared unlawful . . . of the particular alleged violations" and "[d]emand that the person correct, repair, replace, or otherwise rectify the goods or services. . . . The notice shall be in writing . . . ."  Cal Civ. Code. § 1782(a).  "California courts require 'a literal application of the notice provisions.'"  *Delarosa v. Boiron, Inc.*, 818 F. Supp. 2d 1177, 1192 (C.D. Cal. 2011) (quoting *Outboard Marine Corp. v. Superior Court*, 124 Cal. Rptr. 852, 859 (Cal. Ct. App. 1975)); *see also Cattie v.*

*Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 949 (S.D. Cal. 2007) ("[C]ompliance with [the notice] requirement is necessary to state a claim.").

Here, Plaintiff Moylen alleges that he "notified Defendant in writing by overnight mail on July 25, 2016 of the particular violations of" the CLRA. Compl. ¶ 182. He then filed suit on August 1, 2016. *Coburn et al. v. Lumber Liquidators, Inc.*, No. 1:16-cv-05018 (E.D. Va. Aug. 1, 2016), ECF No. 1. This filing occurred just seven days after he provided notice, less than the thirty day required notice period. Nevertheless, at the hearing on Defendant's Motion, Plaintiff argued that the CLRA's pre-suit notice requirement only applies to claims for damages and not claims for injunctive relief and that under the CLRA, plaintiffs are provided an opportunity to amend their complaint to include a request for damages thirty days after providing notice.

Under the CLRA, "[a]n action for injunctive relief brought under the specific provisions of Section 1770 may be commenced without compliance with [the thirty day notice provision]." Cal Civ. Code. § 1782(d); *see also Cattie*, 504 F. Supp. 2d at 949 ("[A] consumer may bring an action for injunctive relief without giving notice."). Where that has occurred, "[n]ot less than 30 days after the commencement of an action for injunctive relief, and after compliance with [the thirty day notice provision], the consumer may amend his or her complaint without leave of court to include a request for damages." *Id.* However, when a plaintiff seeks damages *in his complaint*, regardless of whether that damages claim is coupled with a claim for injunctive relief, the plaintiff's "failure to give notice before seeking damages necessitates dismissal with prejudice, even if a plaintiff later gives notice and amends." *Cattie*, 504 F. Supp. 2d at 950; *see also Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1196 (S.D. Cal. 2005) (dismissing with prejudice a plaintiff's CLRA claim for damages when plaintiff sought both damages and injunctive relief without first providing notice); *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285,

1304 (S.D. Cal. 2003) (dismissing with prejudice a plaintiff's CLRA claim for damages where plaintiff did not first provide adequate notice). This outcome comports with "[t]he clear intent of the [CLRA] . . . to provide and facilitate pre-complaint settlements of consumer actions wherever possible and to establish a limited period during which such settlement may be accomplished." *Outboard Marine*, 52 Cal. App. 3d at 41. By way of contrast, "[p]ermitting Plaintiff to seek damages first and then later, in the midst of the lawsuit, give notice and amend would destroy the notice requirement's utility, and undermine the possibility of early settlement." *Cattie*, 504 F. Supp. 2d at 950.

Because Plaintiff Moylen did not provide the required notice before bringing his CLRA claim for damages, the Court GRANTS the motion to dismiss the CLRA claim (Count VI) for damages with prejudice and DENIES the motion to dismiss as to Plaintiff's claim for injunctive relief,[14] without prejudice to any position that may be subsequently asserted in this litigation on the issue of notice as to the CLRA claim for injunctive relief.

### E. Violation of the Alabama Deceptive Trade Practices Act ("ADTPA"), Ala. Code §§ 8-19-1 *et seq.* (Count VII)

Alabama Plaintiff Florez, brings a claim under Alabama Code §§ 8-19-1 *et seq.* (the "ADTPA") for unlawful trade practices. That statute declares unlawful "deceptive acts or practices in the conduct of any trade or commerce" which include, *inter alia*, "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have," Ala. Code § 8-19-5(7), and "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," *id.* § 8-19-5(7). The statute does not establish particular elements

---

[14] Lumber Liquidators has not specifically argued that Plaintiff's CLRA claim *for injunctive relief* should be dismissed in the absence of his claim for damages, although substantial questions remain as to the merits of Plaintiff's request for injunctive relief.

that need to be met to establish an ADTPA claim; however, it includes a statute of limitations which specifies that "[n]o action may be brought under this chapter more than one year after the person bringing the action discovers or reasonably should have discovered the act or practice which is the subject of the action." *Id.* § 8-19-14.

The Court has already determined that from the face of the Complaint, it can be determined that Plaintiff Florez filed her complaint more than two years after she discovered, or reasonably should have discovered, the alleged defects in her flooring. *See supra* Section V(A)(2). Therefore, her ADTPA claim is beyond the one year statute of limitations, and the Court GRANTS Defendant's Motion as to Count VII.

**F.    Violation of the Nevada Deceptive Trade Practices Act ("NDTPA"), Nev. Rev. Stat. § 41.600; *id.* §§ 598.0915 *et seq.* (Count VIII)**

Under Nevada law, "[a]n action may be brought by any person who is a victim of consumer fraud." Nev. Rev. Stat. § 41.600(1); *see also Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 657 (D. Nev. 2009). Consumer fraud is defined, in part, as "any deceptive trade practice as defined in NRS 598.0915 to 598.0925, inclusive." Nev. Rev. Stat. § 41.600(2)(e). Those sections of the Nevada Revised Statutes, which make up the NDTPA, provide that, *inter alia*,

> [a] person engages in a "deceptive trade practice" if, in the course of his or her business or occupation, he or she:
> . . .
> 2. Knowingly makes a false representation as to the source, sponsorship, approval, or certification of goods or services for sale or lease.
> 3. Knowingly makes a false representation as to affiliation, connection, association with or certification by another person.
> . . .
> 5. Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith.
> . . .

7. Represents that goods or services for sale or lease are of a particular standard, quality or grade, or that such good are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model.

. . .

15. Knowingly makes any other false representation in a transaction.

*Id.* §§ 598.0915(2), (3), (5), (7), (15). One also violates the NDTPA, when, in the course of one's business or occupation, one "fails to disclose a material fact in connection with the sale or lease of goods or services." Nev. Rev. Stat. § 598.0923(2).

To allege a claim for damages under the NDTPA, a victim of consumer fraud must adequately allege: "(1) an act of consumer fraud by the defendant, (2) caused (3) damage to the plaintiff." *Picus*, 256 F.R.D. at 658. The NDTPA also has an implied reliance requirement included within the causation element when a plaintiff alleges that the basis for the fraud claim is an affirmative misrepresentation made by the plaintiff. *Id.*

Plaintiff Ryan has sufficiently pled consumer fraud by the Defendants. As the Court explained in Section IV(A), *supra*, Plaintiffs have set forth facts which make plausible their claim that Lumber Liquidators knowingly misrepresented that its floors were durable and AC3 compliant when, in fact, they were not. These allegations suffice to make plausible "deceptive trade practices" under the NDTPA. The Court has also determined that Plaintiffs have adequately alleged that their reliance on those deceptive practices caused them to purchase flooring, which turned out to be defective, thereby establishing the second element of Plaintiff Ryan's NDTPA claim. Finally, Plaintiff Ryan adequately alleges damages by stating that her flooring was subject to "warping, cupping, and peeling of the surface of the floor." *Id.* ¶ 98. Like all Plaintiffs, Ryan claims that she "will now be required to remove and replace their defective and damaged laminate flooring." Compl. ¶ 146. Plaintiff Ryan has sufficiently alleged

all necessary elements of an NDTPA claim.  Accordingly, the Court DENIES Defendant's Motion as to Count VIII.[15]

### G.  Violation of the New York General Business Law § 349 (Count IX)

New York General Business Law Section 349(a) ("Section 349") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service."  "[A]ny person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions."  *Id.* § 349(h). Additionally, courts may award treble damages up to $1,000 and/or attorney's fees.  *Id.*  Section 349 does not specify any particular elements; however, New York courts have required a plaintiff to show "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act."  *Stutman v. Chem. Bank*, 731 N.E.2d 608, 611 (N.Y. 2000).  Reliance is not required.  *Id.* at 612 ("[A]s we have repeatedly stated, reliance is not an element of a section 349 claim.").

Plaintiffs have adequately alleged that LL's misrepresentations were "consumer-oriented."  The Complaint alleges that Plaintiffs and class members are consumers and "owners of properties with Defendant's products attached to them."  Compl., Count IX, ¶ 3.  Plaintiffs allege that Defendant sells Dream Home laminate flooring to the consuming public and that Defendant's conduct affects similarly situated consumers.  *Id.*, Count IX, ¶ 4.  These allegations allege facts that make plausible that the challenged conduct is consumer-oriented and would

---

[15] This ruling is also without prejudice to any defense that Plaintiffs' remedy is limited under the applicable warranties.

affect a reasonable consumer acting reasonably under the circumstances. *See Stutman*, 731 N.E.2d at 611-12.

The Court has already determined that Plaintiffs have sufficiently alleged that LL's actions were misleading, *see supra* Section IV(A), and also that the alleged misrepresentation was material, *see supra* Section IV(B).

Finally, the Plaintiffs have sufficiently alleged injury as a result of a deceptive act. Days after the flooring was installed, Plaintiff Hotaling noticed dents and dings in the flooring. *Id.* In addition, one month after her purchase, she noticed buckling, warping, and staining of her floors. *Id.* The Plaintiffs allege that they have been "damaged in, *inter alia*, the amount they paid to purchase and replace Defendant's unmerchantable laminate flooring." *Id.* ¶ 124.[16] Thus, the Plaintiffs have sufficiently alleged damages as a result of a deceptive act.

Because Plaintiff Hotaling has adequately alleged a Section 349 claim, the Court DENIES Defendant's Motion as to Count IX.

**H.    Violation of the Virginia Consumer Protection Act ("VCPA"), Va. Code §§ 59.1-198 *et seq.* (Count X)**

The VCPA declares unlawful, *inter alia*,

[t]he following fraudulent acts or practices committed by a supplier[17] in connection with a consumer transaction . . .:
. . .
2. Misrepresenting the source, sponsorship, approval, or certification of goods or services;
. . .
5. Misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits;
. . .

---

[16] This ruling is also without prejudice to any defense that Plaintiffs' remedy is limited under the applicable warranties.

[17] "'Supplier' means a seller, lessor or licensor who advertises, solicits or engages in consumer transactions, or a manufacturer, distributor or licensor who advertises and sells, leases or licenses goods or services to be resold, leased or sublicensed by other persons in consumer transactions." Va. Code § 59.1-198.

6. Misrepresenting that goods or services are of a particular standard, quality, grade, style, or model . . . .

Va. Code § 59.1-200(A). The Supreme Court of Virginia, analyzing the General Assembly's stated purpose for passing the VCPA,[18] held that the VCPA should be "construe[d] liberally, in favor of the injured party." *Ballagh v. Fauber Enters. Inc.*, 773 S.E.2d 366, 368 (Va. 2015). That court also drew a distinction between the VCPA and fraud at common law, holding that "a plaintiff must prove a violation of the VCPA by a preponderance of the evidence rather than by clear and convincing evidence." *Id.* at 370. In misrepresentation cases, the VCPA requires proof of the elements of (1) reliance and (2) damages. *Id.* In addition, "[t]he VCPA clearly does not require the consumer to prove in every case that misrepresentations were made knowingly or with the intent to deceive." *Id.* However, if violations are found to be "willful," then treble damages can be awarded pursuant to § 59.1-204(A).[19] *Id.*

Plaintiffs have adequately alleged that they relied on LL's misrepresentations for the reasons set forth above and also that they have suffered "damage[s] in the amount they paid for their defective and inferior grade of laminate flooring, and must pay to remove and replace their defective and damaged flooring." Compl. ¶ 25. The Supreme Court of Virginia specifically found that the purchasers of a new home had sufficiently alleged damages in the form of replacement costs for damaged walling and roofing that was misrepresented by the seller to be "free from structural defects." *Tate v. Colony House Builders, Inc.*, 508 S.E.2d 597, 598 (Va. 1999). Plaintiffs have therefore adequately alleged damages.[20] Because Plaintiff Perel has

---

[18] "It is the intent of the General Assembly that this chapter shall be applied as remedial legislation to promote fair and ethical standards of dealings between suppliers and the consuming public." Va. Code § 59.1-197.

[19] "If the trier of fact finds that the violation was willful, it may increase damages to an amount not exceeding three times the actual damages sustained, or $1,000, whichever is greater." Va. Code § 59.1-204(A).

[20] This ruling is also without prejudice to any defense that Plaintiffs' remedy is limited under the applicable warranties.

sufficiently pleaded the required elements to sustain his VCPA claim, the Court DENIES

Defendant's Motion as to Count X.

## I.     Breach of Implied Warranties (Count I)

As this Court has previously explained, "[a]n 'implied warranty' means 'an implied

warranty arising under state law . . . in connection with the sale by a supplier of a consumer

product.'" *In re: Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales*

*Practices and Prods. Liab. Litig.*, No. 1:15-md-02627-AJT-TRJ, 2017 WL 2646286, at *11

(E.D. Va. June 20, 2017) (citing 15 U.S.C. § 2301(7)). The specific prima facie showing for an

implied warranty claim varies among the states involved in this litigation;[21] however, the

required showing is substantively the same, and the parties all rely, at least in part, on the

Uniform Commercial Code. Of particular relevance are the requirements that, to be

merchantable, goods "must be at least such as . . . pass without objection in the trade under the

contract description; and . . . are fit for the ordinary purposes for which such goods are used; and

. . . conform to the promises or affirmations of fact made on the container or label if any."

U.C.C. §§ 2-314(2)(a), (c), (f).

In order to bring suit on an implied warranty claim, however, a prospective plaintiff

"must within a reasonable time after he discovers or should have discovered any breach notify

the seller of breach or be barred from any remedy." UCC § 2-607(3)(a).[22] "The purpose of

giving notice of breach is to allow the breaching party to cure the breach and thereby avoid the

necessity of litigating the matter in court." *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932-32 (9th

Cir. 2011). However, the notice requirement is intended to "defeat commercial bad faith, not to

---

[21] *See* Ala Code. §§ 7-2-314 *et seq.*; Cal. Civ. Code § 1791.1; Nev. Rev. Stat. §§ 104.2314 *et seq.*; N.Y. U.C.C. Law §§ 2-314 *et seq.*; Va. Code Ann. §§ 8.2-314 *et seq.*
[22] Each state involved in this litigation has also adopted this rule. *See* Ala Code. § 7-2-607(3)(a); Cal. Com. Code § 2607(3)(a); Nev. Rev. Stat. Ann. § 104.2607(3)(a); N.Y. U.C.C. Law § 2-607(3)(a); Va. Code Ann. § 8.2-607(3)(a).

deprive a good faith consumer of his remedy," and "the content of the notice need merely be sufficient to let the seller know that the transaction is . . . troublesome and must be watched." U.C.C. § 2-607, cmt. 4. Although "Courts have typically . . . regarded the sufficiency and reasonableness of notice as a question of fact for the jury," *In re: Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices and Prods. Liab. Litig.* ("*Lumber Liquidators I—Motion to Dismiss*"), No. 1:15-md-02627-AJT-TRJ, at 23 (E.D. Va. Dec. 11, 2015), ECF No. 722, courts may dismiss a claim where it is clear on the face of the complaint that the plaintiff has not alleged any valid form of notice, and the complaint has therefore failed to state a claim.

Here, Plaintiffs have not sufficiently alleged that they notified Lumber Liquidators of its alleged breach within a reasonable time after they discovered or reasonably should have discovered the defects they allege in the Products. All of the Representative Plaintiffs claim to have purchased their flooring between October 2013 and August 2014 and discovered shortly after those purchases that aspects of the flooring were inconsistent with the warranties that accompanied their purchases and the representations that Lumber Liquidators made to them prior to their purchases. *See generally* Compl. ¶¶ 94-103. Yet none provided LL with notice until 2016, at which point, Plaintiffs allege that "all of the Plaintiffs provided actual notice of defective flooring to LL by mail." Pls.' Mem. Opp'n. 28. Plaintiffs' alleged notice is insufficient as a matter of law.[23]

In an effort to satisfy the notice requirement, Plaintiffs allege that "Defendant received notice that the [Products] were not merchantable through its own product testing, its 'robust

---

[23] Other than timeliness, there are also substantial issues with the adequacy of the notice Plaintiffs ultimately provided. At least some of the notices were sent by Plaintiffs' counsel, were directed to Defendant's counsel, and included a demand letter. *See* Pls.' Mem. Opp'n 28. Such notice cannot be reasonably said to achieve one of the U.C.C. provision's purposes of allowing the parties an opportunity to resolve a dispute before formal dispute resolution in order to avoid the costs of litigation.

Quality Assurance Program,' and numerous customer complaints, well before Plaintiffs . . . filed suit." Compl. ¶ 123. Any "notice" obtained through such testing, evaluations, and complaints does not supply the required notice with respect to these particular Plaintiffs. In the Fourth Circuit, under U.C.C. § 2-607(3), it is "irrelevant whether a seller ha[s] actual knowledge of a nonconforming tender. Instead, the critical question [i]s whether the seller had been informed that the buyer considered him to be in breach." *Aqualon Co. v. Mac Equip., Inc.*, 149 F.3d 262, 266 (4th Cir. 1998) (quoting *E. Air Lines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957, 972 (5th Cir. 1976)) (internal quotation marks omitted).[24]

Plaintiffs also claim that Defendant received notice in the form of comments which irate, mostly anonymous, consumers posted publicly on LL's website and through direct complaints that customers made to LL. *See* Compl. ¶¶ 127-36, 138-39.[25] Again, the question is not whether LL was aware of defects in the flooring but rather whether it was aware that these particular Plaintiffs considered LL to be in breach, thereby providing an opportunity for LL to resolve the claims of these particular Plaintiffs. Comments submitted by customers who are not part of this litigation do not, therefore, constitute sufficient notice under the U.C.C. For the above reasons, Plaintiffs have failed to plausibly allege compliance with the notice requirements of U.C.C. § 2-607(3), and Defendant's Motion to Dismiss Count I is GRANTED.

---

[24] Similarly, Plaintiffs claim that Lumber Liquidators had sufficient notice in the form of news reports about the Products at issue and cite this Court's opinion in *Lumber Liquidators I—Motion to Dismiss*, No. 1:15-md-02627-AJT-TRJ, at 23-24 (finding that "the notice that defendant received, either from some plaintiffs directly, or through others sources" was "sufficiently alleged"). Here, however, Plaintiffs have not alleged that there were any news reports concerning the durability of LL's flooring, as opposed to formaldehyde, and as this Court made clear in the formaldehyde MDL, the defendant there had *actual* notice of the plaintiffs' claims well before plaintiffs filed their complaint, which Plaintiffs have not adequately alleged in this case.

[25] Certain of these allegations are the subject of Defendant' pending motion to strike [Doc. No. 51], which the Court has under advisement.

**J.     Violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301 *et seq.* (Count III)**

The MMWA provides a federal cause of action for state law express and implied warranty claims.  *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 291-92 (4th Cir. 1989).  A consumer may bring suit who is "damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract."  15 U.S.C. § 2310(d)(1).  "[C]ourts have in turn found it 'beyond genuine dispute that, as to both implied and written warranties, Congress intended the application of state law, except as expressly modified by Magnuson-Moss, in . . . breach of warranty actions.'"  *Carlson*, 883 F. 2d at 291 (quoting *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1013-14 (D.C. Cir. 1986)).

Lumber Liquidators moves to dismiss the MMWA claim on the grounds that the Representative Plaintiffs have failed to adequately allege the pre-suit notice required under applicable state law and also based on the substance of the warranties alleged.

**1.     Dismissal Based on the Failure to Provide Notice**

For the reasons described in Section V(I), *supra*, none of the Representative Plaintiffs provided pre-suit notice or an opportunity to cure; and it would initially appear that having found Plaintiffs' allegations inadequate for the purposes of their state law breach of warranties claims, their MMWA claims would likewise need to be dismissed.  Complicating that analysis, however, are the deferred notice provisions in the MMWA, on the basis of which the Representative Plaintiffs oppose dismissal on the grounds that under the MMWA, they have the opportunity to provide any required notice and an reasonable opportunity to cure once the representative capacity of the named Plaintiffs has been established.  *See* Compl. ¶ 164.

The MMWA states, in relevant part:

No action (other than a class action . . .) may be brought . . . and a class of consumers may not proceed in a class action under such subsection with respect to such a failure [to provide the required notice and opportunity to cure] except to the extent the court determines necessary to establish the representative capacity of the named plaintiffs . . . unless the person obligated under the warranty or service contract is afforded a reasonable opportunity to cure such failure to comply…. In the case of such a class action . . . such reasonable opportunity [to cure failure to comply] will be afforded by the named plaintiffs and they shall at that time notify the defendant that they are acting on behalf of the class."

15 U.S.C. § 2310(e) (emphases added).

Courts have recognized that these provisions impose different requirements on individual plaintiffs and class action plaintiffs, but neither the Supreme Court nor the Fourth Circuit has provided a definitive answer to whether because of these provisions, a plaintiff who has failed to adequately allege the required notice under applicable state law for his own claim may nevertheless prosecute warranty claims under the MMWA as a class representative and, in that capacity, provide the required notice and opportunity to cure on behalf of the entire class, including, presumably, himself.  Some district courts have held that MMWA claims by plaintiffs who have failed to provide the required pre-suit notice under applicable state law must be dismissed, even if those claims are filed on behalf of a class.  *See, e.g.*, *In re Rust-Oleum Restore Mktg., Sales Practices and Prods. Liab. Litig.*, 155 F. Supp. 3d 772, 799 (N.D. Ill. 2016) (finding sufficient notice but stating in dicta that "courts have applied the same U.C.C. pre-suit notice requirements to reject breach of warranty claims brought under the MMWA"); *Bearden v. Honeywell Intern. Inc.*, 720 F. Supp. 2d 932, 936-37 (M.D. Tenn. 2010) (dismissing class action MMWA claim where plaintiffs filed a class action before providing notice and an opportunity to cure, noting that "the language of the statute is mandatory"); *Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF (PVT), 2009 WL 4723366, at *10 (N.D. Cal. Dec. 4, 2009) (dismissing a class MMWA claim because "Plaintiffs . . . have failed to allege that they provided adequate notice to [the defendant] that they were acting on behalf of the class prior to filing suit"); *Perona*

*v. Volkswagen of Am., Inc.*, 684 N.E.2d 859, 864 (Ill. App. Ct. 1997) ("Magnuson–Moss incorporates the relevant state law on U.C.C. notice"). Under this construction of the MMWA, the deferred notice provisions would appear to allow, at most, notice to be given on behalf of class members after the filing of suit only by a qualified representative plaintiff who, by virtue of his own pre-suit notice, is able to pursue his own individual claim. This view would also appear to harmonize the MMWA with applicable state law and avoid the curious result that MMWA and state law claims that would otherwise be barred can be resurrected, Lazarus-like, by a precluded plaintiff simply filing on behalf of a class.

Other courts have held that the deferred notice provisions allow for precisely that – deferred notice on behalf of a class after the filing of suit by a class representative, presumably even a representative plaintiff whose own claim would be barred under applicable state law for failure to provide pre-suit notice. *See, e.g.*, *In re Porsche Cars North Am., Inc.*, 880 F. Supp. 2d 801, 824 (S.D. Ohio 2012); *see also Walsh*, 807 F.2d at 1004 (D.D.C. 1986) ("The Act . . . provides that a plaintiff may *file* a class action, but may not *proceed* with that action, until she has afforded the defendant a reasonable opportunity to cure its alleged breach. While the class action is held in abeyance pending possible cure, the district court may rule on the representative capacity of the named plaintiffs . . . ."); *Galitski v. Samsung Telecomms. Am., LLC*, No. 3:13-CV-4782-D, 2013 WL 6330645, at *10 (N.D. Tex. Dec. 5, 2013) ("[P]laintiffs are bringing their MMWA claim on behalf of a class . . . . Accordingly, they are not required at this juncture to plead that they have given [the defendant] an opportunity to cure the defect."). This construction of the statute would promote the MMWA's intended purpose of providing expanded protections for consumers through a class action remedy that may not be available under applicable state law. *See Walsh*, 807 F.2d at 1012 (In passing the MMWA, "Congress sought only to supplement

state warranty law by prescribing certain minimum standards for warrantors, and by affording consumers *additional* avenues for redress." (emphasis added)); *see also* 15 U.S.C. § 2311(b)(1) ("Nothing in this chapter shall invalidate or restrict any right or remedy of any consumer under State law or any other Federal law.").

Neither party has substantially briefed how the deferred notice provisions of the MMWA should be applied in this litigation.[26]  It appears to the Court that the appropriate context for ruling on this lack of notice issue is within the context of class certification, where the Court will determine the suitability of the particular Plaintiffs to serve as class representatives.  For this reason, the Court DENIES the motion to dismiss the MMWA claims based on the Representative Plaintiffs' failure to provide the required pre-suit notice under applicable state law, without prejudice to any position that may be subsequently asserted in this litigation on that issue.

### 2. Dismissal Based on the Substance of the Warranties Alleged

### a. MMWA Implied Warranty Claims

As noted above, to be merchantable and non-violative of an implied warranty, goods "must be at least such as . . . pass without objection in the trade under the contract description; and . . . are fit for the ordinary purposes for which such goods are used; and . . . conform to the promises or affirmations of fact made on the container or label if any."  U.C.C. §§ 2-314(2)(a), (c), (f).

The Court finds that the Complaint sets forth a plausible basis for Plaintiffs' MMWA implied warranty claims. Plaintiffs allege that "[t]he laminates are not fit for their intended purpose of residential use due to their lack of durability."  Compl. ¶ 119.  According to Plaintiff,

---

[26] Although referenced in the parties' submissions, the Court would benefit from more focused briefing on several related issues, including (1) how traditional preemption principles operate as to class actions with respect to the MMWA's notice provisions; and (2) whether aspects of the applicable limited warranty (viz., requiring Plaintiffs to file claims with LL and/or accept store credit) effectively impose a pre-suit notice requirement, notwithstanding the MMWA.

AC3 durability is the industry standard of fitness for ordinary use. Because the Products were less durable then the AC3 durability standard, they were not fit for ordinary use. Construing the Complaint's allegations most favorably to the Plaintiffs, the Court concludes that Plaintiffs have alleged sufficient facts to make plausible their MMWA implied warranty claims.[27]

### b.    MMWA Written Warranty Claims

Under Section 2301(6)(A), a "written warranty" is "any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time." A "written warranty" under the MMWA means

> (A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or
> (B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking . . . .

15 U.S.C. § 2301(6).

In support of their written warranty claims, Plaintiffs argue that LL's "written promises made in connection with the sale of the Laminates relate to the nature of the material and affirms or promises that such material will meet a specified level of performance over a specified period of time and in fact fail [sic] to do so." Compl. ¶ 159. The only written affirmations made in

---

[27] The text of the limited warranties associated with Plaintiffs' purchases contains the following disclaimer: "WE DISCLAIM ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OF FITNESS FOR A PARTICULAR PURPOSE." *See* Def.'s Mem. Supp., Ex. 1 at 14. Lumber Liquidators has not specifically moved to dismiss based on the disclaimer in the applicable limited warranties, and the Court, accordingly, has not considered the effect, if any, of that disclaimer on Plaintiffs' warranty claims, including such related issues as whether the disclaimer, with any limited remedy, which Plaintiffs claim did not appear directly in the invoice LL provided to Plaintiffs at the time of sale, but on Defendant's website, was "conspicuous." *See* U.C.C. § 2-316.

connection with the sale of the Products to these Plaintiffs were (1) the limited warranty, (2) written affirmations made on LL's website, and (3) written materials displayed in certain LL retail locations.  The limited warranty does not "promise" that the Products are "defect free or will meet a specified level of performance over a specific period of time."  In fact, the warranty specifies that the flooring "is warranted against finish wear from normal household conditions resulting in the exposure of the paper layer"; however, coverage is disclaimed for "[d]amages caused by moisture," which "can cause issues such as cupping, crowning, warping, buckling, peeling, seam swelling, twisting, delaminating, or gapping"; "indentations and scratches"; and "[f]adding."  Def.'s Mem. Supp., Ex. 1 at 16-17.  Furthermore, the warranty does not cover "5% of the total square footage of your purchase," which is deemed to be a "waste factor" representing ordinary wear and tear.  *Id.*, Ex. 1 at 12.

Plaintiffs' allegations concerning the defects in their flooring appear to be the exact types of damage that the written warranty explicitly exempts from coverage, including (1) "scratching," (2) "[f]ading," (3) "[b]ubbling," (4) "[w]arping/curling," and (5) "[s]taining." Compl. ¶ 15.  To the extent any of their allegations are not encompassed by the disclaimed types of damage, Plaintiffs have not alleged that any such damage exceeded the five percent waste factor for which *all* types of damage are disclaimed under the express terms of the warranty. Therefore, the Court concludes as a matter of law that the alleged limited warranty does not constitute a "written warranty" for the purposes of the MMWA.

The Court also concludes that many of the representations Plaintiffs rely on, which appeared on LL's website, are not written warranties, but rather product descriptions.[28]  *See Gold v. Lumber Liquidators, Inc.*, No. 14-CV-05373-THE, 2015 WL 7888906 (N.D. Cal. Nov. 30,

---

[28] These representations include statements that the flooring is "very durable," "extremely durable," "scratch resistant," and "harder than hardwood."  Compl. ¶ 10.

2015) (finding that Lumber Liquidators' statements that its flooring was "exceptionally durable," "long  lasting," "harder than hardwood," and "free of defects" "amount to nonactionable puffery" under the CRLA and UCL); *see also Vitt v. Apple Comput., Inc.*, 469 Fed. Appx. 605, 607 (9th Cir. 2012) (finding claims that a laptop was "mobile," "durable," "portable," "rugged," "built to withstand reasonable shock," "reliable," "high performance," "high value," an "affordable choice," and an "ideal student laptop" were "non-actionable puffery"); *In re Shop-Vac Marketing and Sales Practices Litig.*, 964 F. Supp. 2d 355, 361 (M.D. Penn. 2013) (finding that"[d]efendants' representations regarding horsepower and tank capacity" of vacuums did not constitute written warranties under the MMWA). Consequently, these statements are not actionable under the MMWA.

However, the Complaint alleges that AC3 "is the primary industry standard for durability of laminate flooring," Compl. ¶ 4, and that the "AC rating is dependent upon the thickness, uniformity, and composition of the top wear layer," *id.* ¶ 22. It further alleges that at least two of the Plaintiffs had their Products tested and those tests revealed that the Products were not in fact AC3 compliant, demonstrating that AC3 compliance has a technical definition and is a measurable quality. These statements constitute written assurances of AC3 compliance and therefore constitute a promise of a certain level of workmanship and specified level of performance that comes within the MMWA's definition of a written warranty. *See Gold*, 2015 WL 7888906, at *10 (finding LL's representation that its flooring "meets accepted industry standards" was "precisely the 'measurable' quality that nudges a statement over the line from mere puffery to actionable misrepresentation"); *see also United Concrete & Constr. v. Red-D-Mix Concrete, Inc.*, 836 N.W.2d 807, 816 (Wis. 2013) (finding the defendant's representation that a specific defect in a concrete product had been remedied was not puffery because the matter

was "a technical problem, with a technical definition and a technical solution"). Plaintiffs Moylen (Cal.), Ryan (Nev.), and Hotaling (N.Y.) have each alleged that they saw a written representation of the Products' AC3 compliance on LL's website. Plaintiff Florez (Ala.) alleges that she saw a written chart representing the Products' AC3 compliance at a retail location. All four of these Plaintiffs allege that they relied on these written representations in purchasing LL's Products. Accordingly, Defendant's Motion is denied as to these four Plaintiffs' MMWA written warranty claims. Plaintiff Perel (Va.) does not allege seeing any form of written representation of AC3 compliance prior to his purchase, however. Accordingly Defendant's Motion is granted as to Plaintiff Perel's MMWA written warranty claim.

To summarize, the Court GRANTS Defendant's Motion on Count III as to Plaintiff Perel's written warranty claim only and otherwise DENIES Defendant's Motion as to Count III without prejudice, absent further rulings, to Defendant's right to renew its motion within the context of class certification, summary judgment, or trial.

## VI. CONCLUSION

For the reasons stated above, Defendant's Motion is:

1. GRANTED as to all claims for breach of implied warranty (Count I);

2. GRANTED as to Alabama Plaintiff Florez's claim for fraudulent concealment (Count II);

3. GRANTED as to Virginia Plaintiff Logan Perel's claim for breach of written warranty under the Magnuson-Moss Warranty Act (Count III);

4. GRANTED as to California Plaintiff Moylen's claim for damages under the California Legal Remedies Act (Count VI);

5. GRANTED as to Alabama Plaintiff Florez's claim under the Alabama Deceptive Trade Practices Act (Count VII); and

6. DENIED as to all other claims.

Accordingly, Counts I and VII are DISMISSED. The proceedings will continue as to Counts II, III, IV, V, VI, VIII, IX, and X.

The Court will issue an appropriate order.

The Clerk is directed to forward a copy of this Memorandum Opinion to all counsel of record.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
July 7, 2017